Case No. 16-5267 Mercy Hospital, Inc. Appellant v. Eric B. Hargan, Acting Secretary, United States Department of Health and Human Services Ms. Webster for the Appellant, Ms. Wright for the Appellee Let me explain that Judge Tatel is joining us today but is doing it by the wonders of modern technology Judge Tatel, can you hear us? Yes, good morning Okay, we can hear you. So he'll be asking questions. Good morning, how are you? Good morning, how are you? Fine. Proceed, please. I'm Stephanie Webster for the Appellant, Mercy Hospital. Mercy Hospital challenges the Medicare contractor's retrospective calculation of the low-income percentage, or LIP, add-on to the base Medicare payment rate established by the Secretary for Rehabilitation Facilities. The core legal question before the Court is whether the statute unambiguously precludes review of the LIP payment, one of several discretionary adjustments to the base payment rates for other factors. The answer is no. For over a decade, the Secretary interpreted the statute the way the hospital does, to mean that only the unadjusted base prospective payment rates established under What role should the Secretary's prior and repudiated interpretation play in our deliberations? The Secretary's prior interpretation underscores that the statute is at least ambiguous. The Secretary now argues that the statute is unambiguous, but he had previously interpreted it to mean what the hospital means. In the Secretary's prior interpretation, the statutory text, as well as the context of the statutory scheme, show that the statute is at least reasonably susceptible to divergent interpretations. Let me ask you again about the rules of interpretation here, because I get the normal rule of construing ambiguity in favor of judicial review. But we have a provision here that applies both to administrative agency proceedings and to judicial proceedings. In City of Arlington v. FCC, the Supreme Court held that when it comes to agencies' determination of their own administrative jurisdiction, they get Chevron deference. And so what I'm trying to reconcile is, do they get deference as it concerns their administrative aspect of barring review versus the judicial review? How do we reconcile those things? Well, in our view, City of Arlington is not relevant here because it involved agency interpretation of its substantive regulatory authority or jurisdiction as to the subject matter of what it had authority over, not jurisdiction in the sense of administrative appeals or issuing judicial review. Why would that matter? I get why they wouldn't get deference on determining the scope of our jurisdiction. But why would that matter? Why wouldn't City of Arlington apply to them deciding how the administrative structure is supposed to work internally? Well, the two are tied together. The statute precludes administrative and judicial review. And under circuit precedent, the agency can't bootstrap deference to its interpretation with respect to judicial review through its interpretation of administrative review under Murphy Exploration. Of course, if they got deference, then they'd be in the box of having a prior inconsistent position. Sure. Would they not? Yes, they would, indeed. So the text, the context, as well as the prior interpretation show that there is at least ambiguity in the statute, and the government has not met its heavy burden. Of course, Miss, I'm sorry. Webster. Webster, I'm sorry. I mean, you're assuming it's ambiguous because the secretary has interpreted it two different ways, right? But the secretary's earlier interpretation could have been wrong. That doesn't mean it's ambiguous from our perspective. It's we who have to decide whether it's ambiguous or not. Sure enough, it's possible that the secretary's interpretation was wrong. We believe it was not wrong. It is the better reading of the statute. I know that's your view. But doctrinally, the way we look at this, I think, is that whether this is ambiguous or not is a judgment this court makes. Correct? Yes. So then why don't you go ahead and explain why you think that – well, do you think this is unambiguous in your favor? We contend that the best reading of the statute is our reading. But at the very least, there is ambiguity. Section J3A requires the secretary to determine prospective payment rates and also provides that such rates are then adjusted. And that is indeed how the secretary interpreted it previously. In addition, the context and structure of such – Let me just interrupt you.  But that's not what it says. It's not the rate that's being adjusted. It's the average payment. Look, at its core, here's what the statute says. The secretary shall determine a prospective payment rate, and that rate shall be based on the average payment, which adjusted by the five things. So it's the average payment that's adjusted. Yeah, our view is that the adjusted – it's such rate mentioned in the second sentence of paragraph J3A that is adjusted. And that's confirmed by section J3A2, which also – regarding the adjustment for outlier payments. Did you diagram sentences in junior high school? Because if you diagram this sentence, the phrase adjusted by modifies average payment. You would have a diagonal line going down from average payment. That's what it modifies. I can't say as though I diagrammed sentences in junior high school. But I did try to diagram this one, and I think that it is at least ambiguous. And the context of subsection J supports that as well. Paragraph J3A2 also talks about reducing such rates. And in addition, the term prospective payment rates used elsewhere in subsection J must mean the unadjusted prospective payment rates in order for it to make sense. For example, paragraph J3A4 makes clear that such rates that are adjusted under the paragraph J3A2 that I just referenced must be the prospective payment rates before adjustment. In addition, paragraph J6 related to the wage index also confirms that the wage adjustment is made to the base prospective rates computed under paragraph J3, which is prior to the adjustment. In addition, the area wage adjustment itself is listed as one of the precluded items in paragraph J8. And if the secretary's view were correct that the area wage adjustment were part of the prospective payment rates under J3, then there would have been no need to list it separately in J8. There's also an issue with respect to the weighting factors. The weighting factors are mentioned in paragraph J5, which in paragraph J5 requires the secretary to publish the methodology and data used in computing the prospective payment rates and also separately requires the publication of the classification and weighting factors. And if classification and weighting factors were part of the prospective payment rates, there would be no reason to list those separately. And weighting factors as well are listed among the precluded items in J8. So the statutory BAR judicial review applies to the establishment of the prospective payment rates. So when, where, and how is the prospective payment rate established under your view? The prospective payment rate is established in the rulemaking each year in advance of the federal fiscal year. So that's the rulemaking they publish in the Federal Register? Correct. And so your position is if they announce in the Federal Register, here's how we're going to do it, and they announce in there some completely unlawful way of calculating it, you cannot challenge, you cannot bring an APA action to that Federal Register action because that would be the establishment of the prospective payment rate. Assuming that the item that you're challenging is part of the prospective payment rate. Yes. Yes. In our case, we are actually challenging the Medicare contractor's application of the rules. What I'm trying to figure out is your theory. Normally the way you would think it would work is that challenges would be brought at the end of the notice and comment process. And if they announce, you know, a legal rule that said, we just refuse, for example, to apply weighting factors, we're just not going to do it. And no one would be able to challenge that until they actually sent in a bill and decided it was worth fighting over the bill? Well, in that case, there would be an ability to challenge because the Secretary's action would arguably be ultra-virus. The Secretary would not have. Put aside that exception and what it means to be ultra-virus. But under your reading of the statute in the judicial bar, that is exactly what's proscribed. The establishment of the weighting factors, right, and the classification system leading up to the weighting factors. Correct. But then if when you get your bill and you have your dispute with the contractor, all you're doing is challenging a categorical cross-cutting judgment about how they're going to compute these rates, as opposed to some sort of individualized mistake. Why isn't that just doing later what the bar says you couldn't do earlier? It sounds to me like you're saying whatever your challenges are, just hold them in reserve until you've submitted your bill and haven't gotten the money you want. And then you get to challenge the very thing that they bothered to say there's no judicial review of, that legal error in establishing the prospective payment rate. We're saying that hospitals can challenge the application of the established rules. And here there was a rule saying that the lip payment was to be calculated like the Medicare disproportionate share hospital or dish payment that applies to acute care hospitals. What if they had said that in the Federal Register Notice? I know normally the lip payment is done afterwards because that's when the numbers are there. But if they announce forward-looking, by the way, of course we won't have the numbers to actually give you the calculation until later. But our intention is to apply the dish payment problem that you have here when we do the low-income payment. Your position is that you couldn't challenge it then as a challenge to the rule announced in the Federal Register Notice because that would be establishment or not? Well, our position is that the lip payment isn't part of the prospective payment rates and therefore isn't precluded. If you assume that it is, you could. I'm assuming they announced the legal rule for how this number is going to come out then. So your position is you could still challenge that. You just couldn't challenge something that they said was a miscalculation, another aspect in which they said we're not going to. We're saying we can challenge whether that rule was properly applied to the hospital in calculating the lip payment. But you don't dispute that they properly applied the rule. You just said the rule was wrong. Actually, we like the rule. The rule says lip follows dish. And the Secretary, in an effort not to pay as it would pay under dish, has filed this motion to dismiss. We actually think the rule is just fine as is and want it applied properly in this case. And the rule is that lip follows dish. And under dish, the agency must follow the mandate in Northeast Hospital. And we would like the mandate in Northeast Hospital followed here as well. Imagine a hypothetical where you disagree with the rule. The rule is lip won't follow dish. And your position is you could challenge that either. They just announced it in the Federal Register. You could challenge that either at the Federal Register stage or at the payment stage? Both? Yes, our position, because we believe the lip payment is not part of the prospective payment rates, we could challenge either, yes. What would you challenge then? What does the judicial review bar stop? What type of challenge to prospective payment rates at the Federal Register stage would there be that would be right? What kind of challenges are permitted, Your Honor? No, what is foreclosed? Okay, what is foreclosed under the hospital's view? That would be ripe at that stage before anybody has turned in a bill. The establishment of the weighting factors and the classification system. I'm just trying to figure out if the judicial bar is doing much practical work under your reading. Because if you look at the scheme, wouldn't Congress be saying it's not right for you to bring a challenge back at that stage. Anyhow, you're supposed to go through this whole payment process. Congress knew about that. So that payment process already sort of displaced challenges back at the establishment stage under your view, did it not? At the establishment stage, there could be a challenge to the rule adopted by the Secretary. Just to make sure I understand your question, Your Honor is asking what is reviewable or what is not reviewable under the hospital's reading. No, so under your reading, which as I understand it is, the establishment of the rate, prospective payment rate, occurs back when they do those Federal Register notes. Yes. And so that must be what Congress cut off review of. Is that right? Yes, the establishment of the listed items in J8, correct. And so what I'm trying to figure out is what work would the judicial review bar do under that theory. Because my concern is that any hospital that would want to bring a challenge to those legal rules back then would already be foreclosed by principles of brightness. And the fact that there's an alternative scheme to take your claims to once you actually have submitted a bill and not gotten pays. I'm just trying to make sure that your position lets the judicial review bar still do some work. It still does some work because under our view, there are still, aside from the lip payment, there are still other adjustments that have budget neutrality and other interactive components that are. But those adjustments aren't establishment of the rate, are they? I thought that was your whole position was that the adjustments are to the rate. They are not the established rate. Well, there's the rate and then there are adjustments such as the outlier adjustment, for example. And this is an adjustment, too. Yes. OK. Yes. But if your position is the adjustments are separate from establishment of the rate and saying that someone could challenge adjustments, does it give an example of what Congress was cutting off when it said you can't challenge establishment of the rate? Well, it's cutting off. It's cutting off challenges to pieces of the entire payment rate that are set prospectively and have a budget neutrality slash, you know, relative or, you know, interactive effect with other pieces of the rate. So it is doing some work by precluding establishment of all of the items listed in J8. For example, the conclusion of review in J8 of the case mix weighting factors, which is separately listed under J8, those are set in advance and they're all relative to each other. And therefore, it would make sense for Congress to have chosen to separately list that aside from the prospective rates under Paragraph 3. There is also evidence in J8 itself that the other factors adjustments under Paragraph J835 should not be precluded. J8 does not preclude review of the establishment of the entire methodology under Subsection J. It also doesn't preclude review of payments of the subsection. And those terms, methodology and payments under subsection are otherwise used in Subsection J. And Congress chose not to use them here. There are broader blanket bans on review elsewhere in Medicare. Let me check with my colleagues. Judge Tittle, do you have any more questions? No, thank you. We'll give you two minutes back on rebuttal. Okay. Do you want me to continue? Yeah, your time is over. Okay, thank you. Okay, thank you. Good morning. Good morning. Abby Wright on behalf of the Acting Secretary. I'd like to begin with Paragraph 3. Paragraph 3 directs the Secretary to determine a prospective payment. Can I ask you? Yes. I'm very sorry. Before you get into anything more immediate, I just want to make clear on one thing. Sure. CMS was statutorily obligated to issue its decision within 60 days. And you listed as having been decided June 11, 2015, which would not be within that 60-day period. And before I get into any analysis of whether that's jurisdictional or not, I have to say the handwriting at the end is a bit confusing. Is it? We know it was June 1 or June 11. I don't, Your Honor, and I haven't. You don't have to take time right now then. It might be good if that could just get clarified after argument. We'd be happy to send in the 28. You haven't even think about whether that's jurisdictional or not. Yes, yes. And to be honest, we haven't. It's kind of squirrely. It looks like it might be June 1. Okay. I just want to clarify that one thing. We'll send in the 28-day letter on the date. Sorry to distract you. I'm sorry. I don't know the answer. So to turn to Paragraph 3, the Secretary is directed to determine a prospective payment rate. Under plaintiff's reading, prospective payment rate means unadjusted rate. But if you substitute unadjusted rate into that paragraph, it simply doesn't make sense. And the paragraph directs the Secretary to determine the prospective payment rate, which is the amount a hospital is paid per discharged patient. You start with the average payment rate, and the Secretary makes five categories of adjustments. Paragraph J8 plainly precludes review of the prospective payment rates established under Paragraph 3. That is the amount that the So when does the establishment happen? I think we agree the establishment happens in that rulemaking. That's when it's set forth what the hospital will be paid based on discharge. They're not challenging anything in that Federal Register rule. They're challenging something that comes long after the fact. Well, in our view, the lit payment adjustment is calculated the way the contractor calculated it, and so that was established at that point. It would be, I think, very easy for hospitals to make an end run around what Congress has clearly tried to bar very broad. Well, I mean, that's sort of the question before us. But just to lay my cards on the table here, first of all, this is hard text to wade through. Everyone always wants to have judicial notice that everything is ambiguous in the statute, but I won't do that. I'm sure careful reading sometimes works. But the relevant provisions here actually seem to alternate sometimes between establishment, which seems to be this baseline, and determination, and determine, or determination. Determine is a verb, and establish is a verb. And determine seems to be what's commonly used to the adjustment process. You take what was established, and then you do these other things, adjusting it. And that adjusting process and figuring out what the final number is, that's the determining of the payment. Well, I think the adjustments are also established as well. I know, but it doesn't bar the adjustment. It bars establishment of the prospective payment rate, which you said happens at the federal register stage, which isn't when the lit payment is established. I mean, I think a couple of responses. I think determine and establish, the ordinary meaning of establish can mean I establish your salary, I establish that you get paid $100,000 a year. That's the amount that you will be paid. Their argument really comes down to, I think, what prospective payment rates means. Well, I think it's the phrase, established prospective payment rate. And, yeah, you know, GS whatever might set, or when I was in the government, might have set my base salary. But then there were all kinds of adjustments based on their savings plan and taxes and what insurance policies. And so someone ultimately determined what my paycheck was. And isn't this a similar process? If establishment, if all that's barred is the establishment of the prospective payment rate, that just under plaintiff's theory means that at the time of the rulemaking, the only thing that you can't challenge, the only thing that work that 8B does is to say you can't challenge the establishment of that average unadjusted rate, which is basically meaningless because no one's going to challenge that. Well, maybe it means up front. Maybe what's going on here, and like I said, this is dense material, so I could be completely wrong. But one way to think of it is there is this whole other scheme here that, you know, there'll be payments and contractors, and then you can challenge it to a board, and then you can challenge the CMS. And so there's this very, look, wait until we've got a real-world money fight, and then go through this administrative process with ultimate judicial review, and that this judicial review bar here is a way of forcing that channeling. Don't be coming running to us early on, complaining about the rules. Wait until you've really got skin in the game, that you've put in a bill, you've seen it calculated and computed, and that's what you want to challenge. Could it be almost a channeling provision like that? I don't think so. It would do virtually nothing if that's what it was. All of these challenges come up through the contractor-board-administrator process. And so we would be cutting out nothing, basically, because everyone has this pent-up APA challenge to that federal register notice in advance of actually going through this process. Hospitals don't, I mean, I can't say they never do that. They do sometimes do that when there are big rule changes that they don't like. But on a sort of day-to-day, your bread-and-butter challenge is to the amount that is established as what you're getting paid per discharge patient. The statute doesn't use established for what the hospital is getting paid. It uses determined. It's talking about what check gets cut. It does use two different verbs. We don't ascribe a significance to that. But don't we have to as a matter of statutory construction? Well, I mean, synonyms can be in a statute. I think I don't have a site to talk about that. Established and determined don't sound like synonyms to me. Determining, I determine your salary, I establish your salary, I think those are both words that we could use to mean the same thing. But it could also mean different in a salary way that I just explained. There's an establishment of sort of the rules, the baseline, and then there's individualized adjustments, and that's the determination process. Well, I think maybe I should turn to a case like Florida Health Sciences where the hospital attempted to say, I'm only challenging this part, I'm only challenging the data used, I'm not challenging the ultimate determination. And I think here, even if you read determined and established as different, the hospital can't challenge that determination without also challenging the establishment, the way that the secretary determined to calculate the live adjustment. And so I think even if you want to read those as different verbs in different directions, I think what you'd have in effect was still a challenge to the establishment of those prospective payment rates. That's the amount that the hospital gets paid. The hospital's challenge here is to say, we don't like how you calculated our live adjustment, we want to be paid more per discharged patient. And so I think it would still fall within paragraph 8B. And just to go back to why their reading of the language can't be right, again, I would just direct the court, just as the district court said here, there's an insurmountable hurdle, which is the language in paragraph 3, which makes clear that that prospective payment rate means the final rate that the hospital is paid. It does not mean an unadjusted rate. It seemed to be so insurmountable for the agency when it had a contrary view for quite some time. Well, so the regulation from 2001, as the district court said, it was not the product of legal research or reasoning that the court or CMS has been able to determine. There were no comments on it. There was no discussion. And, of course, the Secretary couldn't create jurisdiction where Congress had withdrawn it. So I think it's not relevant to this court's determination of the scope of the judicial review bar that's before the court. You're agreeing that agencies don't get any deference, at least as to determining jurisdiction within the agency proceedings, even after such a hearing? No, I think we would argue that we get deference to this. You took a considered decision. You had it for quite some time. You seem to be applying it the way they're reading it because they have the challenges. A couple of responses. I mean, first, I think, as Your Honor noted, or maybe it was opposing counsel, but the administrative and judicial review language is identical. So insofar as we don't get deference in this court for the judicial review bar, it doesn't really assist this court's analysis to think about, I think, what deference would be appropriate in the administrative context. In addition, in terms of the practice, what Plaintiff Hospital has pointed to are some occasions where there were proceedings before the board. Plaintiff has not pointed to any time that the Secretary and CMS is unaware of any time that the Secretary or Administrator actually confronted the issue and approved the practice. So I think in terms of what happened in reality on the ground, it just wasn't thought about for that 10-year period until it became to the forefront when the Secretary was considering it. The OVC wasn't thought about. Weren't you actually applying it in the same way? The board was applying it. My point was just that there's no... Well, the board's to you. The agency. In terms of the Administrator confronting the issue and once the issue was confronted, the 2013 regulation... Did nobody came to court? No one came to court. In any of those cases? No. If you look at 1395WWD7, that is another example of where it talks about establishing diagnostic-related groups and weighting factors but determining certain adjustments. So it's doing the establish and determine, it's going to be different there, following the sort of model I was suggesting. Why isn't that... I think establishment makes, using that verb for the case mix, the weighting factors, makes sense. That is done. The Secretary groups patients that are of similar cost to treat and comes up with weighting factors and those are established and then they are applied to determine. To determine. That's right. But again... It's defining something different than established too, which is perfectly sensible. Again, I want to get back to my other point in response to that, which was that I think it would be, and they are still challenging the establishment even if they are trying, which I think is not their argument, to be clear. I think their argument rests on the prospective payment rate and that's what they briefed in the district court and that's what the district court decided. But even taking this argument, they are still challenging the establishment, the way the Secretary chose to calculate the low income percentage adjustment. They are not challenging the data that the Secretary used. They are not challenging anything with respect to that calculation. They are really challenging how the Secretary and contractors implementing the Secretary's instructions calculate that low income percentage adjustment. And that's the establishment. Let me ask you, you cited Florida Health Services. Thank you. Well, thank you. But in your brief, I don't remember you arguing that point. Did you argue? Well, I think in response to Judge Millett's questions, this is not the way that Plaintiff Hospital framed their argument. So in response to her questions, I think Florida Health Sciences can be a helpful case for the idea that you can't sort of characterize your challenge to a sliver of something, thereby trying to avoid a broad preclusion of judicial review. So you say in your brief that, of course, this wouldn't cut off ultra-virus agency action. Why isn't what you're doing here, which is in defiance of our circuit precedent, on how they seem to be calculated? A couple of responses. I'd just like to start by noting that I went back and looked at this morning. I don't see them developing an ultra-virus argument in their opening brief. They used the phrase once in passing. You brought it up, saying, don't worry about the consequences of our no judicial review can ever touch us argument. So you yourself articulated as a cabin on your position here about how the statute works. So I don't think you can get away from it that easily. I don't think I can get away from that easily. I just wanted to make that point. I just want to know. So in Amgen, yes, this court, I think, has reserved the possibility of ultra-virus review. In Northeast Hospital, dealt with the dish payment, which is a statutorily-based payment. The lip payment incorporates the uses as a proxy that Medicare and Medicaid fraction. It is different from the dish payment in a couple of respects. It does not track the dish payment directly. So the Affordable Care Act, for example, changed the dish payment quite a bit. The lip payment has not changed. There is no question with respect to the lip payment of the language that Congress used, because there is no language that Congress uses. This is something the Secretary, as a policy decision, implemented as a discretionary adjustment. So I think those are all reasonable arguments that take us well out of the sort of patent. Well, at the time they rendered these services, at that time when they rendered their medical services, how would they have thought they were going to get paid? I don't know, because we don't. Part of the Northeast Hospital decision is all about the practice on the ground of dish payments. So that's obviously the merits. I don't think it before this court. All you're asking is... There's this problem of sort of services are rendered and then the rules are retroactively changed, and here it's a regulation built on a statute, but it would have been perfectly sensible for them to think that when you brought in that statutory scheme into the regulatory framework, it was going to get calculated the way the statute required it to be calculated. And now you change the rules after we rendered the medical services. Well, to be clear, in our Northeast Hospital, this court did not say the statute required it to be calculated in the way that it was calculated. No, but the way it was... I'm talking about expectations at the time. The expectations... I don't know. This has not been developed. I don't know. I think we have reasonable arguments that take us well outside of the patent access of authority that the Secretary didn't hear... Imagine a statute where the Secretary didn't have authority to make discretionary adjustments, and the Secretary did that. I think that could fall into the ultra-verious category. What we have really here is a dispute about the calculation of a discretionary adjustment factor, and that simply isn't within the very rare category of cases, and, of course, we don't have a case where the court actually did this, of ultra-verious actions. Did it take? Were there any questions for Ms. Wright? Thank you. We ask that the district court be affirmed. Great. Thank you. Ms. Webster, could I ask you to respond to your friend's argument about the Florida Health Services cases? That analysis. Well, in our view, Florida Health does not dictate the outcome of this case because here, as there, there's a need to look at the specific language and context of the particular statute. And to the extent that Florida Health stands for the proposition that the component parts of a particular calculation are precluded, if the whole of those parts is precluded, then that makes our surplusage argument all the stronger because if that were true, then there would have been no need for Congress to separately list all the different items that are otherwise addressed under J3. Isn't the LIP inextricably intertwined with the provider with the prospective payment rate? Well, the LIP payment is the least intertwined of any of the adjustments, and we don't believe it is inextricably intertwined. It is made after the fact at cost report settlement using data from the cost year at issue, and it doesn't involve any of the other calculations or prospectively set adjustments at all. It's prospectively set separate and apart from the federal rates and even a lot of the other adjustments that are made to those rates. So is that an argument, then, that you are apart from challenging other adjustments and just not this one? Well, at the very least, we contend that this adjustment should be reviewable because it is a retrospective adjustment, not a prospective adjustment, and the term in J8 is prospective payment rates. This is not a prospectively determined payment rate whatsoever. In fact, the data, paragraph J5, requires the Secretary publish the data methodology. It does publish the methodology for LIP, but it has never been able to publish the data. It can't because that data is just simply not available until after the cost year is over. On the idea that the regulation was not reasoned, I think the agency's view in the administrative decision was that the word unadjusted was inadvertent, and that just doesn't seem credible to us, especially since the term is adjusted and unadjusted or otherwise used in the context of that rulemaking. It's not a word like an and or an or or not that inadvertently gets added. In any event, that regulation was the product of notice and comment rulemaking, and we should presume that to the extent that the agency is adopting a regulation through notice and comment rulemaking that there was some consideration being given to how it reads. On the ultra-virus point, we actually did indeed brief that, an opening brief at 53 and a reply brief at 28. In Northeast Hospital, this court decided that the Secretary had exceeded her then, his now statutory authority in applying the new rule on Part C days retroactively, and likewise, the agency would be exceeding its authority here in doing the same for the lip payment. Great. Thank you very much. Thank you. We have your argument cases submitted.
judges: Tatel, Griffith, Millett